UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL L. ALEXANDER,

        Petitioner,

v.                                                                                    Case Number: 08-cv-11714
                                               HON. AVERN COHN

MILLICENT WARREN,

        Respondent.
_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Michael L. Alexander ("Petitioner") is a state prisoner who was convicted of two counts of assault with intent to commit murder and two counts of felony firearm following a bench trial in the Wayne County Circuit Court.  He was sentenced to concurrent terms of twenty to forty years in prison for the assault convictions, consecutive to two concurrent two-year prison terms for the felony-firearm convictions.  Petitioner through counsel, presents seven claims, including judicial bias, the improper admission of identification evidence, prosecutorial misconduct, the effectiveness of trial counsel, the trial court's findings of fact, and improper sentencing.  Respondent, through the Michigan Attorney General's office, filed a response, arguing that the petition should be denied because Petitioner's claims are either unexhausted, procedurally defaulted, or lack merit.  For the reasons which follow, the petition will be denied for lack of merit.  The Court also will decline to issue a certificate of appealability.

## II.  Facts and Procedural History

Petitioner was initially charged on two consolidated files.  In the first file, he was charged with one count of assault with intent to commit murder and felony firearm for incidents that occurred on February 7, 1999, and in the second file, he was charged with two counts of assault with intent to murder and felony firearm for incidents that occurred on February 11, 1999.

On August 21, 2000, the date scheduled for trial, Petitioner waived his right to a jury trial and elected to proceed with a bench trial.  After the trial started and the trial court heard testimony from several witnesses, Petitioner agreed to plead no contest to three counts of assault with intent to commit murder and two counts of felony firearm with a sentence of two to ten years, resulting in a sentence of four to ten years.

Prior to sentencing, Petitioner received a presentence investigation report, which calculated his guidelines higher than the agreed upon sentence.  The trial court allowed Petitioner to withdraw his plea, which he did.  Petitioner then moved to disqualify the judge; the motion was denied.  The Michigan Court of Appeals denied Petitioner's request for interlocutory leave to appeal.  *People v. Alexander*, No. 230841 (Mich.Ct.App. Dec. 13, 2000).  The bench trial then continued.

The Michigan Court of Appeals summarized the facts revealed at the bench trial as follows:

> Defendant's convictions arise from allegations that he assaulted the complainant on February 7 and 11, 1999, because the complainant was pursuing a woman that defendant was dating.  According to the complainant, defendant phoned him before February 7 and came to his workplace to "convince" him to have no further contact with Charita Elledge.  At approximately 1:00 p.m. on February 7 defendant approached the complainant in his driveway and again directed him to "leave [Elledge]

2

alone." The complainant testified that defendant told him that he was not going to kill him, but was going to shoot him in the leg to demonstrate his seriousness. Defendant told the complainant to stand still and warned him that he would be shot in the head if he ran. In response, the complainant ran through his backyard, jumped a fence, and escaped down an alley. The complainant testified that he could see defendant shooting at him. Two of the complainant's neighbors testified that they observed the complainant running through the neighborhood as a man was chasing him with an automatic weapon. One neighbor heard the man in pursuit yell, "halt," and saw him fire two or three shots at the complainant. The complainant managed to escape without injury, and reported the incident to the police. The complainant had no further contact with defendant until February 11.

The complainant testified that defendant called his home several times on February 11 as he and a friend, Monique Simon, were preparing to go out. Approximately ten minutes later, the complainant's mother arrived and drove them to her house so that the complainant could borrow her second car. The complainant rode in the backseat and Simon was in the front passenger seat. On the way to his mother's house, the complainant saw defendant driving a white Thunderbird. Upon arriving at his mother's house, the complainant, his mother, and Simon all observed a white Thunderbird drive past the house, turn the corner, come back, and park two houses down. Thereafter, the complainant and Simon got out of the car and got into a different car. The complainant then heard two gunshots and saw defendant firing at him from the Thunderbird. Defendant then blocked the driveway so that the complainant could not drive away. The complainant pushed Simon down on the floor of the car, put the car in reverse, and "rammed" his car into defendant's driver's side door. As the complainant was driving toward defendant's car, defendant fired four or five shots at the complainant's car and then fled the scene. One of the bullets struck the complainant in his hip. Both the complainant and his mother identified defendant at trial as the shooter.

Defendant testified at trial and denied any wrongdoing. He claimed that he did not "really" know the complainant, denied that he was dating Elledge, and denied that he ever owned a white Thunderbird. He maintained that at the time of the shooting he was cleaning the carpet of a Bloomfield Hills law firm. Defendant presented the law firm's secretary as an alibi witness to corroborate his story. However, the owner of the law firm testified that his carpet was never cleaned in 1999, nor did he ever give permission for it to be cleaned. With regard to the incident on February 11, defendant maintained that he was having dinner at a restaurant in Ann Arbor with some friends at the time of the shooting. Defendant presented the testimony of two alibi witnesses to corroborate

3

his testimony.

*People v. Alexander*, No. 233761, 2003 WL 21108472, at *1-2 (Mich.Ct.App. May 15, 2003) (unpublished).

The trial court found Petitioner guilty of assault with intent to murder and felony firearm for the February 7, 1999 shooting, and guilty of one count of assault with intent to murder and felony firearm for the February 11, 1999 shooting.  The trial court found Petitioner not guilty on the second count of assault with intent to murder charge for the February 11, 1999 shooting.  As noted above, Petitioner was sentenced to concurrent terms of twenty to forty years for the assault convictions, consecutive to two concurrent two-year terms for the firearm convictions.

Petitioner filed his direct appeal with the Michigan Court of Appeals, which affirmed his convictions and sentences, but remanded for correction of his presentence report.  *Alexander*, 2003 WL 21108472, at *1-7.  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied on November 24, 2003.  *People v. Alexander*, 469 Mich. 971 (2003) (Table).

Petitioner filed a post-conviction motion with the trial court, which was denied.  *People v. Alexander*, No. 99-004310-01 (Wayne County Circuit Court, Aug. 3, 2005).  His delayed application for leave to appeal with the Michigan Court of Appeals was denied on April 2, 2007, *People v. Alexander*, No. 272122 (Mich.Ct.App. Apr. 2, 2007), and, on October 29, 2007, the Michigan Supreme Court denied his application for leave to appeal.  *People v. Alexander*, 480 Mich. 920 (2007).  A motion for reconsideration was filed and was denied on January 22, 2008.  *People v. Alexander*, 480 Mich. 1034 (2008).

4

Petitioner then filed the instant petition.

### III.  Discussion

### A.  Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state

court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000).  A state court's decision is an "unreasonable application of" clearly

established federal law "if the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case."  *Id.* at 413.  A state court decision "based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court proceeding[.]"  *Miller-El v. Cockrell*,

537 U.S. 322, 340 (2003) (citations omitted).

Recently, the Supreme Court held that "a state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

5

on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---,
131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).
The Supreme Court emphasized "that even a strong case for relief does not mean the
state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*,
538 U.S. 63, 75 (2003)).  Section 2254(d) does not completely bar federal courts from
relitigating claims that have previously been rejected in the state courts, but rather, it
preserves the authority for a federal court to grant habeas relief only "in cases where
there is no possibility fairminded jurists could disagree that the state court's decision
conflicts with" the Supreme Court's precedents.  *Id.*  Indeed, "[s]ection 2254(d) reflects
the view that habeas corpus is a 'guard against extreme malfunctions in the state
criminal justice systems,' not a substitute for ordinary error correction through appeal."
*Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in
judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is
required to show that the state court's rejection of his claim "was so lacking in
justification that there was an error well understood and comprehended in existing law
beyond any possibility for fairminded disagreement."  *Harrington*, --- U.S. at ---, 131
S.Ct. at 786-87.

## B. Exhaustion

Respondent argues that the petition should be dismissed because Petitioner
failed to exhaust claims six and seven.  Although a prisoner filing a habeas petition
under 28 U.S.C. § 2254 must first exhaust all state remedies, s*ee O'Sullivan v.
Boerckel*, 526 U.S. 838, 845 (1999), it is not a jurisdictional prerequisite for bringing a

habeas petition.  *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987).  An

unexhausted claim may be addressed if pursuit of a state-court remedy would be futile,

*see Witzke v. Withrow*, 702 F.Supp. 1338, 1348 (W.D. Mich. 1988), or if the

unexhausted claim is meritless such that addressing it would be efficient and not offend

federal-state comity.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see*

*also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the

failure to exhaust state court remedies).  Here, the interests of justice are best served

by ruling on the petition because Petitioner no longer has any state-court remedies

available, and, as will be explained, the claims lack merit.

### C.  Procedural Default

Respondent also argues that claims one and three are barred by the procedural-

default rule.  "[F]ederal courts are not required to address a procedural-default issue

before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212,

215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial

economy might counsel giving the [other] question priority, for example, if it were easily

resolvable against the habeas petitioner, whereas the procedural-bar issue involved

complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  Again, the interests of

judicial economy are best served by addressing the merits of Petitioner's procedurally-

defaulted claims, claims one and three.

### D.  Petitioner's Claims

### 1.  Claim I–Judicial Bias

Petitioner argues that the trial court abused her discretion by denying his motion

7

to disqualify after accepting his plea of nolo contendere, which was subsequently

withdrawn.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a

fair tribunal before a judge with no actual bias against the defendant or an interest in the

outcome of the case.  *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  However, to

state a claim that a judge is biased, a defendant must show either actual bias or the

appearance of bias creating a conclusive presumption of actual bias.  *United States v.*

*Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997).  A judge is required to recuse himself or

herself only where he or she has actual bias or "a predisposition 'so extreme as to

display clear inability to render fair judgment.'" *Johnson v. Bagley*, 544 F.3d 592, 597

(6th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).  In reviewing

a judicial bias claim, a federal habeas court should employ the initial presumption that

the assigned trial judge properly discharged his or her official duties.  *See Johnson v.*

*Warren*, 344 F.Supp.2d 1081, 1093 (E.D. Mich. 2004).

The record establishes that, before any evidence was presented, Petitioner

voluntarily waived his right to a jury trial and elected to proceed with a bench trial.  After

four days of trial, with seven witnesses testifying, Petitioner indicated to the trial court

that he wanted to plead no contest.  The trial court accepted the plea agreement.

Petitioner subsequently withdrew his plea "because the legislative sentencing guidelines

were higher than the agreed upon sentence." *Alexander*, 2003 WL 21108472, at *2.

The Michigan Court of Appeals, the last court to issue a reasoned decision on

this issue, held that Petitioner "failed to demonstrate any actual bias or prejudice on the

part of the trial judge, or that he was otherwise prejudiced, as a result of his aborted

plea." *Alexander*, 2003 WL 21108472, at *2.  The court of appeals further noted that

Petitioner "was not prejudiced where the court was already privy to the facts that were

used to substantiate his plea, and no additional facts were presented during the plea

proceeding."  *Id.* at *3.  The Court agrees.  There is nothing in the record to indicate that

the trial court improperly considered Petitioner's plea in reaching a verdict.  Therefore,

Petitioner is not entitled to habeas relief on this claim.

### 2.  Claim II–In-Court Identification

Petitioner next says that he is entitled to habeas relief because the trial court

erred by admitting an eyewitness' in-court identification where there was no pretrial

lineup or photo array.

It is well established that habeas corpus is not available to remedy a state court's

error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental

fairness, an issue concerning the admissibility of evidence does not rise to the level of a

constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

Due process "prohibits the use of identifications which under the totality of the

circumstances are impermissibly suggestive and present an unacceptable risk of

irreparable misidentification."  *United States v. Crozier*, 259 F.3d 503, 510 (6 Cir. 2001)

(quoting *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000)).  A conviction which is based

on identification testimony must be overturned "whenever the pretrial identification

procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood

of irreparable misidentification.'"  *Id.* (quoting *Simmons v. United States*, 390 U.S. 377,

384 (1968)).  An identification is admissible if reliable, even if obtained through

9

suggestive means.  *See Neil v. Biggers*, 409 U.S. 188, 196-97 (1972).

The Michigan Court of Appeals found that the record did not indicate that any

unduly suggestive identification procedures occurred in this case, stating that Petitioner

failed to provide it with any authority "that a pretrial lineup or photo array is required

before a witness may make an in-court identification."  *Alexander*, 2003 WL 21108472,

at *3.  Moreover, the court of appeals found that there was an independent basis to

admit the in-court identification, stating:

> Additionally, although the witness testified that she did not know
> defendant before the shooting, the record established that she had an
> ample opportunity to observe him before, during, and after the shooting.
> The witness testified that she was in her driveway when she saw
> defendant drive by her house, turn the corner, come back and park two
> houses down.  She then saw defendant shooting at the complainant.  The
> complainant thereafter rammed his car into defendant's car, and the
> witness saw defendant get out of his car and flee.  The witness indicated
> that she "got a good enough look at [defendant's] face to identify him."  In
> sum, because there was an independent basis to admit the witness'
> in-court identification of defendant, the trial court did not clearly err in
> admitting the evidence.  Accordingly, defendant is not entitled to a new
> trial on this basis.

*Alexander*, 2003 WL 21108472, at *3.

The Michigan Court of Appeals's decision is reasonable.  Petitioner has not

shown his due process rights were violated by the in-court identification.  Petitioner is

therefore not entitled to habeas relief on this claim.

### 3.  Claim III–Prosecutorial Misconduct

Petitioner next argues that he is entitled to habeas relief because the prosecutor

improperly argued facts not in evidence when she advised the trial court that Petitioner

had previously been arrested while carrying the same type of weapon as the one used

in the case in trial.

The Supreme Court has held that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The Michigan Court of Appeals denied relief on this claim, finding that "there [was] nothing [in the record] to suggest that the prosecutor's request was improper or was simply a scheme to inject inadmissible evidence." *Alexander*, 2003 WL 21108472, at *4.  Rather, the issue dealt with the prosecutor's attempt to introduce evidence, as opposed to arguing facts not in evidence, and the prosecutor made no further requests to introduce the evidence after the trial court took the matter under advisement.  The court of appeals also concluded that "it [was] highly improbable that the prosecutor's conduct affected this bench trial verdict." *Id.*  The trial court made no reference to the evidence when it found Petitioner guilty.

The Court agrees.  The Michigan Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief regarding this claim.

### 4.  Claims IV and VI–Ineffective Assistance of Trial Counsel

In his fourth claim, Petitioner alleges that trial counsel failed to provide effective assistance of counsel by failing to continue the cross-examination of the complainant's

11

mother.[1]  In his sixth claim, Petitioner alleges that trial counsel was ineffective for failing to request that the trial court instruct itself on the lesser included offenses of assault with intent to murder.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689.

Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established

---

[1]Trial counsel's cross-examination was apparently interrupted by an objection and defense counsel's request for an adjournment.  After a conference in chambers, the trial resumed with the next prosecution witness.  Several days later, the prosecutor inquired whether defense counsel wanted to recall the witness, and he indicated that he did.  After a two-month adjournment, however, the trial was concluded without the witness being recalled.

by *Strickland*. *Knowles v. Mirzayance*, ---U.S. ----, 129 S.Ct. 1411, 1419 (2009). "The

question is not whether a federal court believes the state court's determination under

the *Strickland* standard was incorrect but whether that determination was

unreasonable–a substantially higher threshold." *Id.* at ----, 129 S.Ct. at 1420 (internal

quotation omitted).

The Michigan Court of Appeals, in addressing claim four, stated:

> Defendant contends that additional cross-examination would have
> resulted in impeachment of the witness' identification testimony.  However,
> defendant has failed to indicate what damaging information could have
> been elicited through cross-examination that would have impeached the
> witness' identification.  Further, defense counsel could have strategically
> chosen not to recall the witness for various reasons, including the fact that
> her additional testimony could have been injurious to defendant's case.
> As previously indicated, during direct examination, the witness testified
> that she saw defendant drive by her house, turn the corner, come back,
> park two houses down, and shoot at the complainant.  She also saw
> defendant get out of his car and flee.  The witness testified that she "got a
> good enough look at [defendant's] face to identify him."
>
> Considering that the witness positively identified defendant as the
> perpetrator during direct examination, providing the witness with a second
> opportunity to reiterate her identification certainly could have been more
> damaging than helpful.  In addition, given the complete lack of information
> regarding how the witness' testimony could have been impeached, it
> appears that defense counsel's decision not to recall the witness was a
> matter of sound trial strategy. This Court will not second-guess counsel in
> matters of trial strategy. The fact that the strategy chosen by defense
> counsel did not work does not constitute ineffective assistance of counsel.
>
> Moreover, even if defendant could overcome the presumption of
> sound trial strategy, it is unlikely that defense counsel's failure to recall the
> witness prejudiced defendant by denying him a substantial defense.
> There was other compelling identification evidence presented at trial,
> including the complainant's own detailed testimony.  In addition, a review
> of the record reveals that defense counsel presented a vigorous defense,
> including the presentation of several alibi witnesses.  In fact, one of the
> alibi witnesses was a police officer.  Defendant also testified and denied
> any involvement in the crimes.  Nonetheless, the trial court plainly
> accepted the complainant's version of the events.  Accordingly, defendant

> has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged failure to recall the witness, the result of the proceeding would have been different.  Therefore, defendant is not entitled to a new trial on this basis.

*Alexander*, 2003 WL 21108472, at *5.

This Court agrees.  Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Accordingly, Petitioner is not entitled to habeas relief regarding this claim.

As to claim six, Petitioner has failed to overcome the presumption that trial counsel's failure to request a lesser-included-offense instruction was sound trial strategy.  Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980), "the Constitution does not requires a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  Moreover, because this was a bench trial, it is assumed that the trial court, even if it did not specifically instruct itself, was aware of any and all lesser included offenses.

Even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (same); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (same).

14

Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### 5.  Claim V–Trial Court's Findings of Fact

In his fifth claim, Petitioner contends that the trial court's findings of fact were insufficient; he alleges that the trial court failed to adhere to Michigan Court Rule § 2.517.

Petitioner is not entitled to relief on this claim because the trial court's failure to comply with Rule 2.517 raises an issue of state law not cognizable on habeas review. *See Estelle*, 502 U.S. at 67.  Because this claim is based solely upon Michigan Court Rules, the claim is not cognizable on federal habeas corpus review.

### 6.  Claim VII–Sentencing Violations

In his seventh, and final, habeas claim, Petitioner alleges that his guidelines were erroneously scored under the Michigan Sentencing Guidelines and that the trial court violated *Blakely v. Washington*, 542 U.S. 296 (2004) because it used facts to increase his sentence which were not proven beyond a reasonable doubt.

First, claims regarding the improper scoring of sentencing guidelines are state-law claims and not cognizable in habeas-corpus proceedings.  *Estelle* , 502 U.S. at 67-68; *see also Cook v. Stegall*, 56 F.Supp.2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law and, therefore, are not cognizable).

However, a criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Townsend v. Burke*, 334 U.S. 736, 740-41 (1948) (stating

15

that reliance on "extensively and materially false" information, which the prisoner had no

opportunity to correct, violates due process of law); *Koras v. Robinson*, 123 F.App'x

207, 213 (6th Cir. 2005) (same).  A *Tucker* violation arises only where the improper

information "actually served as the basis for the sentence."  *United States v. Jones*, 40

F.App'x 15, 17 (6th Cir. 2002) (citations omitted); *Tucker*, 404 U.S. at 444, 447.

To be entitled to habeas relief on this claim Petitioner "must show that the

sentencing court actually relied on this information and that it was materially false."

*Hanks v. Jackson*, 123 F.Supp.2d 1061, 1074 (E.D. Mich. 2000); *see also Collins v.*

*Buchkoe*, 493 F.2d 343, 345-46 (6th Cir. 1974) (same).  When a petitioner fails to

demonstrate that the sentencing court relied upon materially false information in

imposing the sentence, the claim is without merit.  *Thomas v. Foltz*, 654 F.Supp. 105,

108 (E.D. Mich. 1987).

Petitioner has made no such showing.  He admits that part of the information in

the report is true and that the trial court did say that she was not penalizing him for his

prior arrests.  Thus, Petitioner has failed to establish that the trial court relied upon

materially false or inaccurate information in imposing his sentence which he had no

opportunity to correct.  He has also not shown he was prejudiced by any state law error

or miscalculation. Habeas relief is not warranted on this claim.

Second, Petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004),

supports his position that his sentence was improperly based on facts that were not

determines beyond a reasonable doubt.  Petitioner is mistaken.  The *Blakely* line of

cases do not apply to Michigan's intermediate sentencing scheme.  The Sixth Circuit

has held that Michigan's sentencing guidelines do not violate the Sixth Amendment

16

because they set a minimum sentence range while the maximum is set by statute. *Montes v. Trombley*, 599 F.3d 490, 494-98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009).  Petitioner is therefore not entitled to habeas relief on this claim.

### IV.  Conclusion

For the reasons stated above, Petitioner has failed to show that the state court decisions denying him relief are contrary to United States Supreme Court precedent or constitute an unreasonable application of federal law or the facts.  Petitioner is not entitled to habeas relief on the claims raised in his petition.  Accordingly, the petition for writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[2] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED.


Dated:  June 1, 2011                          S/Avern Cohn
                                              AVERN COHN
                                              UNITED STATES DISTRICT JUDGE

---

[2]"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

**08-11714   Alexander v. Warren**
**Memorandum & Order Denying Petition**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 1, 2011, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160